T. H. WEBSTER and wife v. WESLEY LAWS and wife.

*Pending Suit—Husband and Wife—Agency—Judge's Charge— Vendor and Purchaser.*

1. The exception based upon the pending of another action between the same parties cannot be entertained under the facts of this case.

2. Where, in an action against husband and wife to recover the price of goods, the court charged the jury upon the testimony offered, that if the wife acted under the directions of the husband and as his agent in the transaction, he is liable; and that it is not necessary to prove the agency by direct testimony, but the same may be inferred from the attending circumstances; *Held*, no error. But in such case no recovery can be had against the wife, whose coverture incapacitates her from assuming a personal obligation.

3. A purchaser of goods cannot resist a recovery for the price by setting up a defect of title in his vendor, and showing a paramount title in a third person who does not himself assert his claim. In case the purchaser's possession is disturbed, he has a remedy upon the warranty of title, express or implied, in the act of sale and delivery by the vendor.

(*Wilson* v. *Lineberger*, 82 N. C., 412; *Sanderson* v. *Daily*, 83 N. C., 67; *Mabry* v. *Henry*, *Ib.*, 298; *Roulhac* v. *Brown*, 87 N. C., 61; *McNair* v. *McKay*, 11 Ired., 602; *Herrin* v. *McIntire*, 1 Hawks, 410; *Cowan* v. *Silliman*, 4 Dev. 46; *Dougherty* v. *Sprinkle*, 88 N. C., 300, cited and approved).

CIVIL ACTION tried at Fall Term, 1882, of ALEXANDER Superior Court, before *Avery, J.*

The defendants appealed from the ruling and judgment of the court below.

*Messrs. Robbins & Long*, for plaintiffs.
*Messrs. D. M. Furches* and *R. Z. Linney*, for defendants.

SMITH, C. J.   This action originating in the court of a justice of the peace and transferred by appeal to the superior court of Alexander, is for the recovery of the sum of eleven dollars, the price claimed to be due for a dun heifer sold to the defendants.

The defendants allege, in resisting the demand, the pendency of another suit between the parties for the same cause of action, when this suit was instituted, deny that any contract of purchase was made, and aver that the plaintiffs were not the owners of the property and could convey no title thereto.   The legal sufficiency of these defences and the rulings of the court in passing upon them, and instructing the jury upon the evidence, are presented for review upon the defendants' appeal:

15

1. The objection based upon the institution and pendency of a preceding action when this was begun cannot be entertained. The defence was made and passed upon in an adjudication upon a former appeal (86 N. C., 178), and is not open to the defendants. If it was, the facts being essentially the same, we see no reason for disturbing the conclusions to which our examination of the subject then led, and which are announced in the opinion. But the matter is *res adjudicata* and settled. *Wilson* v. *Lineberger*, 82 N. C., 412; *Sanderson* v. *Daily*, 83 N. C., 67; *Mabry* v. *Henry, Ib.,* 298; *Roulhac* v. *Brown*, 87 N. C., 1.

2. The denial of the contract: The evidence was conflicting and was fairly submitted to the jury in the charge of the court. Their finding is conclusive as to the sale, unless they were, or may have been, misled by an erroneous instruction of the judge. To ascertain whether the testimony warranted the jury in finding the sale, it is necessary only to recapitulate briefly the testimony offered by the plaintiffs, for it was exclusively their province to pass upon its credit and ascertain what facts were proved.

The *feme* plaintiff testified that in 1876 the *feme* defendant, with her husband, came to the house of Ruth Webster, the mother of the plaintiff (Thomas), with whom the plaintiffs had resided since their intermarriage early in the year 1873, and proposed to buy the heifer, offering the said Thomas the sum of ten dollars for her; that the offer was declined and twelve dollars demanded, but it was finally agreed that the price to be paid should be fixed at eleven dollars; that defendant Wesley was not present when the trade was consummated, and witness did not know where he then was; that this was on Saturday, and on Monday following the said Wesley returned, took possession of the heifer and carried her away, the witness assisting him in securing her. She further stated that her mother-in-law died in 1869.

The plaintiff Thomas testified that his sister, the *feme* defendant, came to his mother's house, when the former proposed, in her husband's hearing, to buy the heifer; that they went together

to the lot where the heifer was, about the time the wife of the witness was milking the cows, when witness offered to sell to his sister for twelve dollars; that the said Wesley then disappeared in the bushes, and his wife agreed to give eleven dollars; that Wesley soon came back, while the conversation was going on about the cows; and he afterwards carried the heifer away.

It was further in evidence that Wesley kept the cow, now a milch cow, for several years, and at last sold her.

Upon the question of sale the court charged the jury, that if the *feme* defendant acted under the directions of her husband, and as his agent in the transaction, he would be liable for the agreed price; that it was not necessary to prove the agency by direct testimony, but it could be inferred from circumstances; that if he was present when his wife made the contract, and came the next week and took possession of the heifer and carried her to his own house, and then sold her after having long used her as a milch cow; these were circumstances from which the agency of the wife might be inferred.

In our opinion, these directions are exposed to no just complaint, and the case was fairly left to the jury in the aspect in which it was presented by the plaintiffs' testimony, and if the facts thus shown were accepted by the jury, they were fully warranted in their finding upon this point.

3. The defendants further contended that the title to the heifer, admitted to have once been in the deceased, had not been divested by the alleged parol gift, because no corresponding delivery and change of possession took place necessary to make an effectual transfer. Much of the argument was addressed to us upon this objection, but we do not deem it important to be considered. Without reference to the formalities indispensable to the transfer of personal property by a parol gift in a controversy between the parties to the transaction, and the rulings of the judge in reference thereto, the right of recovering the purchase money is entirely independent of the solution of an inquiry into the transfer of the property from the deceased former owner to the plaintiffs, both or to one of them.

It is plain that a bailee entrusted with the goods of another could not resist the bailor's demand for their return after the termination of the bailment, nor defend against his action by showing that the title was not in the bailor, but in some other person, unless the latter had asserted his superior and paramount right and the bailee had yielded to it. If he had thus yielded, it was to an answer to the bailor's demand for restitution.

"We do not deny the rule," remarks Mr. Justice STRONG, speaking for the supreme court of the United States, "that a bailee cannot avail himself of the title of a third person (though that person be the true owner) for the purpose of keeping the property for himself, nor in any case when he had not yielded to the paramount title." *The Idaho*, 103 U. S. Rep., 581.

The same principle is asserted in numerous cases. *Osgood* v. *Nichols*, 5 Gray, 420; *Cheesman* v. *Exall*, 6 Ex., 345, note.

Referring to the ruling in *Osgood* v. *Nichols*, in which the defendant was *not allowed to show title in himself* to goods which had been entrusted to him for sale, and he, as auctioneer, had sold and received the money therefor, as a defence to the plaintiff's action for the money paid him, Mr. BIGELOW says: "The same rule applies *between the vendor and purchaser of goods in an action by the vendor to recover the price.*" "It is laid down," he adds, "that no principle of law can be found which would permit the purchaser (in the absence, of course, of the assertion of superior right by another) to set up, in defence of a claim for the price, a defect of title in the vendor. It is not permitted such a party to volunteer the protection of the claims of those who do not themselves assert their claims." Big. Estoppel, 430.

The rule clearly is, that neither bailee nor purchaser of goods who has not paid the price, can resist the recovery by the bailor of the goods, or by the vendor of the purchase money, by showing a paramount title in a third person, unless he can also show an authority from him or its assertion to which he must yield. *McNair* v. *McKay*, 11 Ired., 602; Story on Agency, §217.

But it is suggested that a purchaser may thus incur a double liability, unless he can protect himself from the payment of the purchase money by proving his liability to the rightful owner of the goods. But this is the precise condition of every one who pays the purchase money for goods he buys of another who has no title. He has his remedy in either case upon the warranty, express or implied, in the very act of selling and delivery by the vendor.

But it may be answered that unless the vendor could recover the price, the vendee, if never held responsible by the true owner, would have the goods without paying any one, and in disregard of his promise to pay for them. This would be as unjust to the vendor as the other rule is alleged to be to the vendee.

It was also urged that the defendants have a claim upon the implied warranty which may be used in opposition to the demand for the price of the heifer. This proposition is equally untenable, for a covenant of general warranty is subject to the same construction with a covenant for quiet enjoyment; and it is essential to the maintenance of an action upon it, in the language of Chief Justice TAYLOR, "that the plaintiff assign as a breach an ouster or eviction by a paramount legal title." *Herrin* v. *Mc-Intire*, 1 Hawks, 410. This was said in reference to a warranty in a deed for land, but it is equally true of a warranty in the sale of chattels.

"That a warranty of chattels  *  *  *  is a covenant for quiet enjoyment," remarks Chief Justice RUFFIN, "is a settled rule in this state. It has been understood by the profession too long to admit now of question. Hence upon eviction, the value at that time is the measure of damages. It is familiar doctrine in reference to land, that suit and even recovery is no breach unless the loss or disturbance of possession follows. I had thought it equally so in reference to chattels. The reason is the same. The covenants respect the possession." *Cowan* v. *Silliman*, 4 Dev. 46.

No disturbance of the defendants' possession then having occurred, and neither the alleged owner, up to her death, nor her personal representative since, having asserted any claim, there has been no breach of the implied warranty which can constitute a counterclaim or diminish the sum to be recovered below that mentioned in the contract.

But there can be no recovery against the *feme* defendant, who could not, by reason of her coverture, contract and assume a personal obligation by means of it. This has been so recently decided that we are content to refer to the case of *Dougherty* v. *Sprinkle,* 88 N. C., 300.

It must be declared there is no error in the proceedings as respects the defendant Wesley Laws, and the judgment as to him must be affirmed, but it was error to render judgment against the defendant Nancy, and as to her it must be reversed and she go without day.

Error.                          Judgment accordingly.