SIBLEY, LINDSAY & CURR v. E. L. GILMER.

(Decided May 5, 1899).

*Husband and Wife—Separation—Husband's Liability—*
*Wife's Agency.*

1. A husband can make his wife his agent, and he will be bound by her acts by the same rules of law, as would prevail in the case of any other agency.
2. Where a husband, by his course of acquiescence in the dealings between the plaintiffs and his wife and by his payment of the accounts, held his wife out to the plaintiffs as empowered to purchase goods from them—such agency by implication is as binding as if he had expressly authorized her to buy the goods on his account.
3. The implied agency having been established, the plaintiffs had a right to presume that the authority would be continued until they had reason to know that it had been discontinued.
4. When the whole transaction shows that the credit was extended to the husband, the manner in which the goods were charged to the wife would not affect his liability, especially where monthly statements of the accounts were furnished to him, some of which he paid without objection.

CIVIL ACTION upon an account for goods sold and delivered, tried on appeal from the Justice's Court of GUILFORD County, before *Robinson, J.,* at a Special January Term, 1898, of the Superior Court.

The plaintiffs, a mercantile firm of Rochester, N. Y., dealers in dry goods, offered in evidence an itemized and verified account for goods charged to Mrs. E. L. Gilmer, Greensboro, N. C., to the amount of $82.07, subject to a credit of $20.81—balance claimed $61.26. The account commenced September 29, 1894, and closed December 24, 1894. The plaintiffs claimed that while the goods were sold to Mrs. Gil-

mer and delivered to her, that they were sold to her as agent of her husband, the defendant, and upon his responsibility. Plaintiffs introduced evidence tending to show that as far back as November, 1893, Mrs. Gilmer had been shopping with them, and her husband would from time to time make them remittances by his personal checks, without objection to the bills which were sent to him monthly; that it was not until after the present account was sent to him for payment that they received notice from him of the separation between him and his wife, which was the first information they had of it; that they had had previous dealings with the plaintiff, by running account, charged to him begining May 6, 1890, and running to February 15, 1894, when it was closed by payment. The plaintiffs read in evidence the following letter from defendant:

### EXHIBIT "B."

Greensboro, N. C., January 18, 1895.

MESSRS. SIBLEY, LINDSAY & CURR, Rochester, N. Y.

*Gentlemen:*—In regard to bill of Mrs. E. L. Gilmer, $61.25, will say this bill was made without my knowledge, and I am not able at present to pay it. Will try to meet it later on, though can't tell exactly when. Am in bad condition at present financially. Do not draw on me, as draft must necessarily be returned.

Truly yours,
E. L. GILMER.

P. S.: Mrs. E. L. Gilmer's address is Albion, Orleans County, N. Y.

The defendant, as witness in his own behalf, testified, under objection and exception by plaintiffs, that he and his

wife separated in January, 1894, she going as he believed to New York, and he remaining in Greensboro, N. C., the home of himself all his life, and of him and his wife during the time they lived together as man and wife; that the separation was caused not by his bad conduct, but by the bad conduct of his wife; that since their separation, he had paid her, under the advice of counsel, $25 per month for her support, and sometimes sent her $30 per month; that this was all he was able to pay her, and was a reasonable allowance for one in his circumstances; that he had not authorized the purchase of these goods by his wife; that he and his wife had not lived together since their separation in 1894; that he had brought suit in this Court against his wife for divorce.

Upon cross examination, defendant testified that he had tried to pay the $25 every month—about the first of it; that in the latter part of 1894 he let one month pass without paying it, but paid it and the next month's at the same time; that he did not know what her answer was—whether she had filed a sworn answer denying the charges in his complaint, he did not know.

The defendant also introduced evidence tending to show that the fact of the separation between himself and wife since January, 1894, was a matter of public and general notoriety in Greensboro and throughout North Carolina.

The issue submitted was:

Is the defendant indebted to the plaintiff, and if so, in what sum?

His Honor, after declining to give the instruction asked for by plaintiffs and their exception, gave the following instruction asked for by defendant:

If the jury believed the evidence, it would be their duty to answer the issue, "Nothing."

Plaintiffs excepted. The jury responded, "Nothing."

Judgment in favor of defendant. Appeal by plaintiffs.

*Mr. A. M. Scales,* for plaintiff (appellant).
*Messrs. Bynum & Taylor,* for defendant.

MONTGOMERY, J., delivers the opinion.
DOUGLAS, J., dissents.

MONTGOMERY, J. The only question presented in this
case is: Is the husband liable for the price of goods (ladies'
apparel), not necessaries, sold to his wife, after separation,
by one who had previous to the separation, sold to her, on
credit at various times, goods which were afterwards paid for
by the husband, the seller having been ignorant of the sepa-
ration at the time of the last sale? What constitutes "neces-
saries," and what are the nature and extent of the husband's
liability for "necessaries" furnished to his wife, either while
they are living together or living apart, though discussed at
length on the argument here, are not matters necessary to be
considered by the Court.

In the case on appeal, it appears that the plaintiffs, on the
trial below, abandoned the count for necessaries and relied
upon the agency of the wife. His Honor instructed the jury
that if they believed the evidence, to answer the issue, "Is the
defendant indebted to the plaintiffs, and if so in what sum?"
"Nothing."

The defendant's wife had, before their separation, bought
goods from the plaintiffs in New York City, and they had
sent out monthly statements of account therefor to the defend-
ant at his home in Greensboro, N. C. He never made objec-
tion to the course of his wife, and the husband paid some of
the bills by his personal checks. After the separation the
plaintiffs sold other goods to the defendant's wife, the price
of which this action was brought to recover, the plaintiffs
having no notice of the separation, although it was known
generally in North Carolina and at Greensboro where the
defendant resided.

A husband can make his wife his agent, and he will be bound for her acts by the same rules of law as would prevail in the case of any other agency, and the agency may be express or implied, as in other cases. Schouler Dem. Rel. Sec. 72; Story on Agency, Sec. 7; Meacham on Agency, Sec. 62; *Webster v. Laws,* 89 N. C., 224. That being the true statement of the law, we are of the opinion that upon the facts in this case the instruction of his Honor was erroneous. The matter is one entirely of agency in general; and the agency growing out of the relation of husband and wife by operation of law is not the question involved. The defendant, by his course of acquiescence in the dealings between the plaintiffs and his wife, and by his payment of the accounts, held his wife out to the plaintiffs as empowered and authorized by him to make purchases of goods from them, and such an agency by implication is as binding as if he had expressly authorized her to buy the goods on his account. The implied agency, having thus been established, the plaintiffs had a right to presume that the authority would be continued until they had reason to know that it had been discontinued. *Cowell v. Philips,* L. R. A., Vol. 11, p. 182; *Story, supra,* Section 470; Am. and Eng. Enc. Law, Vol. 1, p. 1230, and cases there cited.

The main contentions of the defendant were, first, that the purchase of the goods on credit was the contract of the wife herself and therefore void, and as corollary that the defendant husband could not ratify a contract, void and against public policy; second, that the wife's implied authority from the husband to purchase the goods from the plaintiff, if it ever existed, was revoked by the separation by force of law as in the case of the death of a principal; and, third, that if there ever existed an implied agency between the defendant and his wife, the plaintiffs had notice of its revo-

cation by reason of the fact that the separation was generally known in Greensboro, where the defendant resided.

We think that although the goods were charged on the books of the plaintiffs to the wife, the whole transaction showed that the credit was extended to the defendant, and the manner in which they were charged could not affect his liability, especially as monthly statements of the account were sent to the defendant, some of which he paid by his personal checks without even a word of objection or protest to the purchases by his wife.

In support of the second mentioned contention of the defendant, his counsel cited the case of *Pool v. Everton,* 50 N. C., 241. In that case the husband and the wife were living apart, and the plaintiff, a physician, attended her in a case of sickness. A public notice by advertisement had been given by the husband, of the separation, and that he would not be liable for her debts, and the plaintiff was aware of such notice having been given at the time he rendered the service. The Court held there, that the plaintiff could not recover on the ground that he had not shown that the wife had good cause of separation. The question there was not one of general agency, but one of operation of law, *i. e.,* the liability of the husband for necessaries, the husband and the wife living apart. The Court said among other things that a married woman could make a contract for her husband that would bind him, and that the agency might be constituted either by express authority or by implication. The defendant's reliance is upon the following language used by the Court in that case: "But this implication of agency can only be made while the parties continue to live together. If they separate and live apart, the idea of an implied agency is out of the question. The effect of the notice (such as was given in this case) is merely to inform the public of the fact of the

separation, which operates as a revocation of any implied agency that existed while they lived together." The language of the eminent Judge who wrote the opinion in that case may not convey as clear a meaning as usually characterized his opinions, but we think the reasonable construction of his words must be that, in cases where husband and wife had separated, no notice of separation need be given to prevent his liability for debts contracted by the wife during the separation—even for necessaries—the law being that if the separation was without good cause on the part of the wife, her debt contracted even for necessaries was not only not binding on the husband, but such creditors made themselves liable to the husband in an action for damages for extending such credit. And we think that while there may be some confusion about the language in the last sentence of the extract from that opinion, the meaning was that the notice given in that case could only affect such creditors as had been, before the separation, dealing with the wife as agent by implication of the husband in respect to matters not strictly to be classed as necessaries for the support of the family.

We think the Court had in mind just such agencies as the one we are treating in this case, as the ones to be affected by the notice.

There was error in the instruction given by his Honor, and there must be a new trial.

New trial.

DOUGLAS, J., dissents.